**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**


SYLVIA WASHINGTON,                    *

        Plaintiff             *

        v.                    *       Civil Case No. 8:23-cv-03024-AAQ

WASHINGTON METROPOLITAN              *
AREA TRANSIT AUTHORITY,
                              *

        Defendant             *

                              *

**MEMORANDUM OPINION AND ORDER**

This is a case concerning a woman who was injured while being lifted into a van. The ultimate question in the case is a relatively simple one: whether a wheelchair lift operator was negligent for failing to stop raising the lift when she saw a passenger shift her feet. Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's Motion for Summary Judgment. ECF No. 51. Defendant argues that, under Maryland law, Plaintiff must present expert testimony supporting her claim that Defendant's wheelchair lift operator breached the applicable standard of care. As Maryland courts have held, expert testimony is not required to establish the applicable standard of care in relatively simple cases, so long as the plaintiff is able to present other evidence of the relevant standard. Accordingly, for these reasons and the reasons stated below, Defendant's Motion shall be denied.

**BACKGROUND**

Unlike many cases before the Court on a motion for summary judgment, the facts of the case are relatively straightforward and not in dispute. Defendant, Washington Metropolitan Area Transit Authority, is a provider of transportation services to the public in a large metropolitan area.

1

*See generally*, Washington Metropolitan Area Transit Authority, www.wmata.com. Among its services, Defendant – via a program called "Metro Access" provides specific services to members of the public who need additional assistance because of disability and/or injury. Washington Metropolitan Area Transit Authority, Metro Access Paratransit, https://www.wmata.com/service/accessibility/metro-access/. These services include transportation from an individual's residence and, if needed, assistance entering into and from the van used for transportation. Washington Metropolitan Area Transit Authority, Metro Access Customer Guide, at 6, https://www.wmata.com/service/accessibility/metro-access/upload/MetroAccess-Customer-Guide.pdf. Defendant's contractor provides training for its drivers, including a video class and a test drivers must pass before they begin working. ECF No. 52-2, at 18. Among other topics, drivers physically learn how to load and unload a lift, as well as properly secure a wheelchair on a lift. *Id.* at 20. This portion of the training is "maybe an hour or two." ECF No. 51-5, at 8. According to the lift operator's manual, WMATA policy, and Metro Access policy, "lift attendants must ensure that lift occupants keep hands, arms and all other body parts within the lift occupant area and clear of moving parts." ECF No. 52-5, at 7; ECF No. 52-6, at 3, 5. Defendant expects its drivers to comply with this requirement. ECF No. 52-5, at 7; ECF No. 52-6, at 5. Defendant's contractor provides additional training when it begins to utilize new models or types of lifts. ECF No. 52-2, at 21.

On December 21, 2020, Onise Adams, a "paratransit driver" of one of Defendant's vans, ECF No. 52-2, at 17-18, drove to Plaintiff's home with the intention of transporting her. ECF No. 52-2, at 5. Plaintiff did not usually ask for assistance with transportation but had specifically requested Defendant's specialized services because of hip problems she was having at the time. *See* ECF No. 51-6, at 3 (testifying that she had not previously used a travel chair on Metro Access);

2

*id.* at 7 (testifying that she is not a "Metro Access person").  Additionally, because of her hip issue, Plaintiff was using a travel chair to assist with movement.  *Id.* at 3-4.

Ms. Adams pushed Plaintiff, in her chair, onto a previously-lowered lift that Defendant uses to assist passengers needing help entering the van.  See ECF No. 52-2, at 7.  The parties agree that Plaintiff pushed Ms. Adams pushed onto the lift with her legs facing the door to the van, ECF No. 51-6, at 7, placing her in the middle of lift.[1]  ECF No. 52-2, at 9.  Defendant agrees that the direction she was facing conflicted with the way Defendant's contractor recommends that its employees place passengers on the lift.  ECF No. 51-5, at 5.  According to Defendant's contractor, individuals should be backed on to the lift to ensure their weight is appropriately balanced across the lift.  *Id.* at 3-4.

The lift included a mobile portion on one side that folded up when lowered and then folded down when raised.  ECF No. 52-4, at 1.  When lowered and folded up, a separation of approximately two inches appeared between the mobile portion and the remaining portion of the lift on which the passenger was seated.  *Id.*; ECF No. 52-1, at 6.  The parties agree that once Ms. Adams pushed Plaintiff onto the lift, Plaintiff was not close to the movable portion of the lift.  ECF No. 51-6, at 12; ECF No. 52-2, at 9.

Once on the lift, Plaintiff, with her right hand, held on to her purse, which she acknowledges was "big and heavy".  ECF No. 51-6, at 7.  The purse, at a minimum, prevented Plaintiff from seeing her feet.  *Id.* at 13.  As Plaintiff admits, she did not know where her feet were. *Id.*  Ms. Adams asked Plaintiff if she was ready to be lifted.  ECF No. 52-2, at 7; ECF No. 51-6, at

---

[1] Though not relevant to the pending Motion, the parties dispute why Ms. Adams pushed Plaintiff on to the lift facing forward.  Ms. Adams testified that Plaintiff asked her to be loaded on to the lift facing forward.  ECF No. 52-2, at 7.  Plaintiff, in contrast, testified that she does not know why she was loaded on to the lift facing forward.  ECF No. 51-6, at 7.

14. Once Plaintiff responded affirmatively, Ms. Adams raised the lift. ECF No. 52-2, at 8. After Ms. Adams began to raise the lift, she saw Plaintiff move her feet forward. *Id.* at 9. Neither Ms. Adams nor Plaintiff saw how far forward Plaintiff had moved her feet. *Id.* at 13; *see also* ECF No. 51-6, at 13 ("I didn't know where my feet were. I just knew they were on the lift."). Plaintiff suddenly felt a pinch on her right foot, exclaiming "my foot[;] my foot". ECF No. 51-6, at 14. When Plaintiff pulled her pant leg back, Ms. Adams saw that one of Plaintiff's feet had become trapped in the small space the two portions of the ramp. ECF No. 52-2, at 10. Ms. Adams lowered the lift so that Plaintiff could remove her foot from the space. *Id.* Once Plaintiff removed her foot, Ms. Adams raised the lift again and helped Plaintiff into the van. *Id.* at 8, 12. According to Plaintiff, the incident fractured one of Plaintiff's toes. ECF No. 51-7, at 2.

On October 4, 2023, Plaintiff filed a single count Complaint in Prince George's County Circuit Court alleging that Defendant's "employee carelessly lifted the chairlift while Plaintiff's foot was stuck in the gap, causing severe injury to her foot." ECF No. 4, at 2. "The Defendant's employee's negligence consisted of, among other things, failing to pay full time and attention to his actions, failing to take reasonable care that Plaintiff was not in danger before operating the chair lift, and otherwise being negligent." *Id.* On November 7, 2023, Defendant removed the case to this Court pursuant to MD. Code Ann., Transportation Article, §10-204(81), which specifically grants original jurisdiction over suits against WMATA to federal district courts. ECF No. 1. On December 4, 2023, the parties consented to proceed before the undersigned and, two days later, the case was referred to my chambers for all further proceedings. ECF Nos. 8 and 9. Over the course of discovery in the case, the Court twice granted, in part, Plaintiff's motions to compel documents, videos and other related materials in the case. ECF Nos. 32 and 43.

On August 18, 2025, Defendant moved for summary judgment, alleging that Plaintiff's failure to designate an expert addressing the standard of care and the standard's breach is fatal to the case. ECF No. 51-1, at 1. Plaintiff, in turn, argues that given the facts of the case, Maryland law does not require expert testimony. *See* ECF No. 52, at 16 ("Any reasonable person knows that a body part should not get trapped between two closing metal plates. Accordingly, no expert testimony is needed to define Defendant's duty."). The Motion has since been fully briefed. ECF Nos. 51, 52 and 53.

## LEGAL STANDARD

The Court will grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the nonmoving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim."

*Scott v. United States*, No. PJM-06-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007).  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *See Anderson*, 477 U.S. at 256-57.  "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility."  *U.S. EEOC v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. Mar. 19, 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002)).

## ANALYSIS

Defendant argues that because the case concerns the standard of care a wheelchair operator owes to customers, Maryland law requires that Plaintiff present expert testimony establishing the standard of care, as well as a breach of the relevant standard.[2]  ECF No. 51-1.  While Maryland law does not require expert testimony in every case in which a plaintiff alleges a wheelchair operator was negligent, given the specific facts of this case, Plaintiff must have presented some evidence based on which a reasonable jury could determine the relevant standard to apply.

To prevail in a negligence action, the plaintiff must prove: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty."  *Rowhouses, Inc. v. Smith*, 133 A.3d 1054, 1066 (Md. 2016)

---

[2] Defendant also argues that expert testimony is required because a wheelchair lift is a complicated mechanical instrument whose failure cannot be understood without expert testimony.  ECF No. 51-1, at 1.  This argument is not relevant to the present case for, as discussed herein, Plaintiff's theory of the case is not based on the mechanical failure of the wheelchair lift.

(quoting *Hamilton v. Kirson*, 96 A.3d 714, 727 (Md. 2014)). "[C]ommon carriers, such as WMATA, owe an elevated duty of care to passengers." *Hall v. Wash. Metro. Area Transit Auth.*, 679 F. Supp. 2d 629, 633 (D. Md. Jan. 7, 2010) (citing *Wash. Metro. Area Transit Auth. v. Reading*, 674 A.2d 44, 49 (Md. Ct. Spec. App. Mar. 29, 1996)); *see Todd v. Mass Transit Admin.*, 816 A.2d 930, 934 (Md. 2003) (explaining that a common carrier "owes its passengers the highest degree of care to provide safe means and methods of transportation for them").

"The elements required to [assert] a cause of action for professional negligence are equivalent to the elements required in a standard negligence action; the professional, however, is held to the standard of care that prevails in his or her profession." *Balfour Beatty Infra., Inc. v. Rummel Klepper & Kahl, LLP*, 130 A.3d 1024, 1034 (Md. Ct. Spec. App. Jan. 28, 2016). In support of such a claim, "[e]xpert testimony is generally admissible when it would be useful to the factfinder in understanding evidence or determining a fact in issue." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 233 A.3d 59, 78 (Md. 2020). However, "[e]xpert testimony is required 'only when the subject of the inference [to be drawn by the jury] is so particularly related to some science or profession that it is beyond the ken of the average layman . . . . " *Johnson v. State*, 179 A.3d 984, 994 (Md. 2018) (quoting *Bean v. Dep't of Health & Mental Hygiene*, 959 A.2d 778, 786 (Md. 2008) (citations omitted)). Applying this rule, Maryland courts have required expert testimony in medical malpractice cases, *Sard v. Hardy*, 379 A.2d 1014, 1024 n.5 (Md. 1977); legal malpractice cases, *Short v. Ramsey*, No. 002742, 2017 WL 1013211, at *3 (Md. Ct. Spec. App. Mar. 15, 2017); cases concerning the operation of a railroad, *Asmussen v. CSX Transp., Inc.*, 237 A.3d 908, 925-26 (Md. Ct. Spec. App. Sept. 10, 2020); cases involving a bank's standard of care when adding a customer to an account, *Schultz v. Bank of Am., N.A.*, 990 A.2d 1078, 1090 (Md. 2010); and cases involving the failure of certain complex mechanical devices such as escalators,

*Holzhauer v. Saks & Co.*, 697 A.2d 89, 95 (Md. 1997), and elevators, *Jones v. Schindler Elevator Corp.*, No. 534, 2018 WL 3116391, at *4 (Md. Ct. Spec. App. June 25, 2018). In such cases, a plaintiff may proceed without expert testimony "if the alleged negligence 'is so obvious that the trier of fact could easily recognize that such actions would violate the applicable standard of care,' such as a dentist extracting the wrong tooth or a doctor leaving an instrument in a patient's body[.]" *Moore v. Wash. Metro. Area Transit Auth.*, No. TJS-24-2891, 2025 WL 1556069, at *3 (D. Md. May 30, 2025) (quoting *Schultz*, 990 A.2d at 1086-87).

However, as Maryland courts have made clear, this Court would sweep too broadly in stating that expert testimony is required every time a case concerns a particular profession or field of expertise. "When a court considers whether testimony is beyond the 'ken' of the average lay[person], the question is not whether the average person is already knowledgeable about a given subject, but whether it is within the range of perception and understanding." *Freeman v. State*, 318 A.3d 1241, 1248 (Md. 2024) (quoting *State v. Galicia*, 278 A.3d 131, 161 (Md. 2022)). "If a jury can use its 'common knowledge or experience' to recognize a breach of a duty, then expert testimony is unnecessary to calibrate the exact standard of care owed by the defendant." *Jones v. State*, 38 A.3d 333, 348 (2012) (quoting *Cent. Cab Co. v. Clarke*, 270 A.2d 662, 667 (1970)). *See also Access Limousine Serv., Inc. v. Serv. Ins. Agency, LLC*, No. TDC-15-3724, 2016 WL 6126267, at *7 (D. Md. Oct. 19, 2016) ("If a jury may reasonably reach a decision without the help of an expert, a party's failure to produce expert testimony will not amount to a failure to meet the party's burden of proof."). In such cases, as Maryland courts have recognized, a plaintiff's failure to present expert testimony is not the end of the inquiry, even if the case involves an alleged breach of the professional standard of care. If a plaintiff alleging a breach of professional care fails to present expert testimony in support of his case, they may establish the relevant standard of

8

care through other evidence, such as testimony from the defendant as to the standard of care in the industry on the relevant question. *See Osiris Holding of Md., LLC v. Daniels*, 330 A.3d 735, 753 (Md. App. 2025) (denying defendant's motion for judgment notwithstanding verdict based on plaintiff's failure to present expert testimony because "the general manager of the cemetery at the time of his deposition, testified regarding industry standards for a disinterment"); *Adams v. Md. Dep't of Health and Mental Hygiene*, No. 0086, 2018 WL 4677444, at *7 (Md. Ct. Spec. App. Sept. 28, 2018) (upholding that ALJ's conclusion that appellant violated industry standards, even without expert testimony where "Dr. Mercer and Zittle testified that the WMHC policy requires nurses to follow physicians' orders and no nurse has authority to disregard such orders."); *CSX Transp., Inc. v. Pitts*, 61 A.3d 767, 786 (Md. 2013) ("Maryland law has long recognized that industry standards can be admissible to show the applicable standard of care, and violations of the standard of care are certainly appropriate for the jury to consider when determining the issue of negligence."); *C & M Builders, LLC v. Strub,* 22 A.3d 867, 875 (Md. 2011) ("[I]ndustry standards . . . may be admissible as evidence of applicable standards of care."); *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 764 (Md. 1986) ("As in any other negligence case, an industry standard, if it exists, may be proven as evidence of the applicable standard of care."). Accordingly, whether Maryland law requires expert testimony in a case involving professional negligence, turns on the specific nature of plaintiff's allegations as to what defendant did to breach the relevant standard of care, and whether plaintiff has presented other evidence from which a reasonable jury could discern the applicable standard of care.

    **I.     Maryland Law Does Not Require Expert Testimony Under the Specific Facts of this Case.**

The question in this case is a relatively simple one, not requiring complex expertise in mechanics, medicine, or accounting: whether Defendant's agent had an obligation to stop moving the lift once she saw Plaintiff move her feet.  Plaintiff alleges that:

> Ms. Adams knew that [Ms.] Washington's foot was near a closing gap between two metal plates.  Ms. Adams saw that Ms. Washington rearranged her feet while the lift was rising, but did not bother to check if Ms. Washington's feet were still in a safe place.  Instead, Ms. Adams continued raising the lift and closing the gap under the Inner Roll Stop.  This was a breach of the duty of ordinary care which Ms. Adams had to Ms. Washington not to injure her.

ECF No. 52, at 3.  *See also* ECF No. 4, at 2.

The relatively simple nature of the inquiry distinguishes it from the cases in which Maryland courts have required proof of industry standards in the form of expert testimony.  *See Am. Radiology Servs., LLC v. Reiss*, 236 A.3d 518, 532 (Md. 2020) ("Juries are not permitted to simply infer medical negligence in the absence of expert testimony because determinations of issues relating to breaches of standards of care and medical causation are considered to be beyond the ken of the average layperson."); *Holzhauer*, 697 A.2d at 95 ("[W]hether an escalator is likely to stop abruptly in the absence of someone's negligence is a question that laymen cannot answer based on common knowledge.  The answer requires knowledge of 'complicated matters' such as mechanics, electricity, circuits, engineering, and metallurgy."); *Dover Elevator Coy v. Swann*, 638 A.2d 762, 774 (Md. 1994) (requiring expert testimony where the case "involved the complicated inner workings of elevator number two's machinery which were outside the scope of the average layperson's common understanding"); *James v. Balt. Gas and Elec. Co.*, No. 1058, 2023 WL 4360717, at *3 (Md. App. Jul. 5, 2023) ("The gross negligence claim thus depended on BGE's ability to analyze and respond to data that showed elevated gas levels.  An assessment of that capability requires an understanding of how BGE receives and analyzes—or does not analyze—

such data. The average juror cannot be expected to understand those procedures without expert testimony.").  In relatively simple cases, such as this one, Maryland courts have allowed the case to be presented to the jury so long as the plaintiff has presented other evidence from which a reasonable juror could discern the applicable standard of care in the industry.  *See Osiris Holding of Md., LLC*, 330 A.3d at 753 (finding that testimony of the defendant was sufficient to establish the standard of care where the case turned on the consequences of not having a mortician present during a disinterment); *Council of Unit Owners of Treetop Condo. Ass'n v. Maryland*, No. 1659, 2019 WL 290018, at \*7 (Md. Ct. Spec. App. Jan. 17, 2019) (rejecting argument that expert testimony was required in case involving management of community association because it did not involve complex questions related to accounting and budgets).

Although Defendant attempts to align this case with the more complex cases listed above, it is distinct.  *See* ECF No. 53, at 2 ("WMATA's Motion for Summary Judgment . . . highlights both the complexity of the machinery at issue . . . on how to load and unload passengers as well as how to operate the lift itself."); *id.* at 3 (arguing that the pressing of a button to operate the lift is one of the core issues in the case).  While Defendant highlights that a wheelchair lift is a complex piece of machinery, it overlooks that Plaintiff's case does not turn on the machinery involved or its complex nature.  Plaintiff does not allege that the wheelchair lift malfunctioned or that the specific controls Ms. Adams operated were incorrect.  Rather, Plaintiff's theory of the case hinges on Ms. Adams' alleged failure to stop lifting the ramp when she witnessed Plaintiff move her feet. Defendant has presented no evidence or explanation as to why the complex nature of the machinery impacts this analysis.  Alternatively, Defendant highlights the training that drivers receive on loading and unloading passengers, arguing that the unique nature of the occupation puts it beyond the common knowledge of jurors.  *See* ECF No. 53, at 2 ("This statement mischaracterizes the

arguments in WMATA's Motion for Summary Judgment, which highlights both the complexity of the machinery at issue and the training MetroAccess Operators receive on how to load and unload passengers as well as how to operate the lift itself."). However, the relevant portion of the training is, at most, two hours. This is emblematic of the distinction between wheelchair lift operation and fields such as medicine, engineering, or banking.

> II. **Plaintiff Has Presented Sufficient Evidence of the Standard of Care to Survive Summary Judgment.**

Nonetheless, as outlined above, even though Maryland law may not require expert testimony, Plaintiff must still present other evidence regarding the applicable standard of care.

Plaintiff has presented sufficient evidence to create a genuine dispute of fact as to whether Defendant violated the industry standard. As this Court has recognized, "WMATA 'owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety.'" *Mido v. Wash. Metro. Area Transit Auth.*, No. TJS-19-1037, 2021 WL 915431, at *3 (D. Md. Mar. 10, 2021) (quoting *Hall*, 679 F. Supp. 2d at 633 (internal quotation marks omitted)). Building upon this obligation, Defendant's own policies define the relevant standard, requiring that a wheelchair lift operator "must ensure that lift occupants keep hands, arms and all other body parts within the lift occupant area and clear of moving parts." ECF No. 52-5, at 7. As Defendant's representatives testified, Defendant expects that its operators, including Ms. Adams, comply with this requirement.[3] Maryland courts have found such testimony sufficient to defeat summary judgment where a defendant has argued that a plaintiff has presented insufficient proof of the applicable standard of care. *See Osiris Holding of Md., LLC*, 330 A.3d at 753 (allowing case to

---

[3] Additionally, Ms. Adams pushed Plaintiff on to the wheelchair ramp facing forward, ECF No. 52-2, at 7, in direct contravention of Defendant's contractor's recommendation, ECF No. 51-5, at 5.

be submitted to the jury, over defendant's objections that expert testimony was required, where defendant's general manager testified that funeral home's actions during disinterment conflicted with its own policies); *Council of Unit Owners of Treetop Condo. Ass'n*, 2019 WL 290018, at \*7 (rejecting defendant community association's argument that expert testimony regarding the management of a community association was required where the case "hinged upon allegations that [community association's] board of directors acted inappropriately and outside the parameters of [its] governing documents").

For example, in *Osiris Holding of Md., LLC v. Daniels*, plaintiff sued a cemetery over the negligent disinterment of her son. 330 A.3d at 742. The plaintiff specifically alleged that the cemetery failed to ensure that a mortician was available for the disinterment and to transfer the remains to a new outer burial container when the original broke during disinterment. *Id.* at 747. During pre-trial proceedings, the court excluded the plaintiff's proposed expert. *Id.* at 743. Accordingly, when the case proceeded to trial, the plaintiff lacked an expert to testify to the applicable standard of care. Nonetheless, the Maryland Appellate Court affirmed the trial court's decision to allow the case to be presented to the jury because the general manager of the cemetery testified that defendant's policies require a mortician to be present and to have a new outer burial container available in case the old one becomes compromised. *Id.* at 753.

The requirement that a plaintiff present some evidence of the relevant industry standard explains why a limited number of courts have found that expert testimony was required in cases alleging negligence involving a wheelchair lift. For example, in *Moore*, on which Defendant relies heavily, the plaintiff alleged that while being raised on the lift, the lift jolted, which caused her to fall. 2025 WL 1556069, at \*1. Although plaintiff inferred that this was the result of the operator's mistake, the operator disputed this characterization, stating that she had consistently declined the

lift, pressing the "down" button. *Id.* Because the plaintiff had failed to present any testimony, or other evidence as to the applicable standard of care, and the "average layperson does not know how a wheelchair lift on a common carrier van should be operated", the court appropriately granted summary judgment.[4] *Id.* at 3. This also distinguishes the other cases involving Defendant's paratransit services on which Defendant relies; in these cases, the plaintiff also failed to present any evidence of the industry standard of care. *See Levai v. Wash. Metro. Transit Auth.*, No. TJS-21-1118, 2022 WL 17325624, at *3 (D. Md. Nov. 28, 2022) (rejecting plaintiff's argument "that the relevant standard of care is 'the standard of conduct to which one must conform,' which is 'that of a reasonable man under like circumstances'"); *Bush v. Wash. Metro. Area Transit Auth.*, No. 19-930 (JEB), 2020 WL 921419, at *5 (D.D.C. Feb. 26, 2020) ("[plaintiff] notes merely that because WMATA is a common carrier, it owed a 'higher duty of care to [her father].' . . . Her observation does not move the needle.").

This case is more akin to this Court's decision in *Mido v. Wash. Metro. Area Transit Auth.*, in which the Court, applying Maryland law, found that a WMATA bus driver was negligent for failing to kneel the bus to allow a pregnant passenger to exit, resulting in her falling. 2021 WL 915431, at *3. Defendant's present argument as to the necessity of expert testimony to establish how to operate a public transit vehicle, as well as the training drivers undergo would have been

---

[4] As Defendant concedes, the courts in *Levai* and *Bush*, under District of Columbia law, applied a different, more-stringent standard than Maryland law requires. *See* ECF No. 51-1, at 8 ("WMATA acknowledges that District of Columbia requires a plaintiff to demonstrate a national standard of Care[.]"). As discussed herein, under Maryland law, in cases where the alleged breach is not complex, the plaintiff must still present evidence of the applicable standard of care, but may do so through evidence other than expert testimony. *See Gholson v. Wash. Metro. Transit Auth.*, No. TJS-20-0226, 2021 WL 4169494, at *3 (D. Md. Sep. 14, 2021) ("Maryland law . . . has different standards regarding the duty of care a common carrier owes to passengers and the manner by which a plaintiff may establish such standard of care. This case is controlled by District of Columbia law, which requires *Gholson* to establish the national standard of care with expert testimony.").

equally applicable in that case.  Nonetheless, this Court found that the plaintiff raised a sufficient dispute of fact to allow the case to proceed to trial.  *Id.* at *4.

To be sure, there may be cases involving wheelchair lifts or the conduct of wheelchair lift operators that require expert testimony even if the applicable standard of care can be established through other evidence.  *See Osiris Holdings of Md., LLC*, 330 A.3d at 753 (noting that even though the court found that expert testimony was not required in one case involving a cemetery it may be required in other cases in which a plaintiff alleged that a casket was defective or a funeral procession was conducted improperly).  For even if the trier of fact was presented with evidence of the applicable industry standard, they may not have the knowledge to apply it or they may need expert testimony to understand, as a factual matter, that a breach occurred.  These may include, for example, cases in which a plaintiff alleges that a wheelchair lift malfunctioned because of an electrical failing, or which turn on how to properly assist a passenger during a health crisis. However, in a case such as this, in which Plaintiff has elicited testimony that the applicable standard of care requires operators to ensure that passengers are clear of moving portions of the lift; under the undisputed facts of the case, Defendant's agent arguably violated the requirement when he failed to stop the lift after the passenger moved her feet; and the case does not involve complicated technical questions, summary judgment is not appropriate.

Finally, although Plaintiff has defeated the single argument Defendant has presented in support of summary judgment, it is not clear that a jury will find that Defendant breached the applicable standard of care.  Additionally, although not a subject of the present Motion, as Plaintiff acknowledges, there is a serious question as to whether Plaintiff in moving her feet forward as Ms. Adams raised the lift was contributorily negligent.  Nonetheless, it is "not the Court's role to act

15

as a factfinder, weigh the evidence, or judge the credibility of witnesses at this stage." *Mido*, 2021 WL 915431, at *3.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgement, ECF No. 51, is, hereby, denied.

So ordered.

Date: March 17, 2026                                                    _____/s/_____

Ajmel A. Quereshi
U.S. Magistrate Judge